[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 26, 2011
JOHN LEY
CLERK

No. 09-16011

_____

D. C. Docket No. 08-00334-CV-RDP-RRA

MARK DUKE,

Petitioner-Appellant,

versus

RICHARD ALLEN,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 26, 2011)

Before DUBINA, Chief Judge, EDMONDSON and WILSON, Circuit Judges.

EDMONDSON, Circuit Judge:

Petitioner Mark Duke seeks habeas corpus relief pursuant to 28 U.S.C. §
2254. We conclude that Petitioner is entitled to no relief under section 2254 and
affirm the district court's grant of summary judgment for Respondent.

I. BACKGROUND

In 1999, Petitioner was prosecuted in Alabama state court for the murders of
his father and three other persons.[1] At Petitioner's trial, Petitioner's defense was
that he had killed only his father, Randy Duke, and had no role in the other three
murders. Had Petitioner's defense succeeded, he would have avoided a sentence of
death or of life imprisonment without parole.

During closing arguments at Petitioner's trial, the prosecutor summarized
the prosecution's theory of the case and said these words:

> [Petitioner's co-defendant] told you all of this. They want you to
> believe that he is a liar. They did their best to call him a liar when he
> testified. I wrote down what he said, "The truth needed to come out.
> Nobody else is going to tell it. I'm telling you the truth." He told the
> truth, ladies and gentlemen, and here is how we know it, there's a
> witness that you heard from but he didn't come in here and talk to you

---

[1] Petitioner was aged 16 at the time of the murders.

2

<u>from this witness stand</u>.  After he shot, stabbed, and cut the throat of Randy Duke, he took Randy Duke's blood with him throughout that house.

Closing Argument Transcript 6-7 (emphasis added).

Petitioner's counsel objected, moved for a mistrial, and then (later outside the presence of the jury) also said these words: "Let the record reflect that the district attorney pointed straight at the defendant when he said that."  <u>Id.</u> at 7.

The trial court denied the motion for a mistrial; the court never mentioned the motion to let the record reflect the prosecutor's supposed pointing gesture.  Petitioner was convicted of capital murder and sentenced to death.

Petitioner directly appealed his conviction; he contended that the prosecutor violated state and federal law by commenting on Petitioner's decision not to testify at trial.  The Alabama Court of Criminal Appeals affirmed Petitioner's conviction.  <u>See Duke v. State</u>, 889 So.2d 1 (Ala. Crim. App. 2002).  The Alabama Supreme Court declined to hear the case.  The U.S. Supreme Court vacated the judgment against Petitioner following its decision in <u>Roper v. Simmons</u>, 125 S. Ct. 1183 (2005), that the Federal Constitution prohibits the execution of defendants for crimes they committed while under the age of eighteen.

On remand, the Alabama Court of Criminal Appeals instructed the state trial court to resentence Petitioner to life imprisonment without the possibility of parole;

3

this was done.  The Alabama Court of Criminal Appeals later affirmed Petitioner's

sentence.  See Duke v. State, 922 So.2d 179 (Ala. Crim. App. 2005).

Petitioner then filed in state court a petition for post-conviction  relief.  The

Alabama state trial court denied relief; the state appellate court affirmed.  The

Alabama Supreme Court again declined to hear Petitioner's case.

Petitioner then filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 in federal district court.  Respondent filed an answer arguing that the

petition should be dismissed.  The district court treated Respondent's answer as a

motion for summary judgment and dismissed Petitioner's petition.  This Court

granted a certificate of appealability; Petitioner appealed.  We affirm the dismissal.


## II.  DISCUSSION


The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"prohibits federal habeas relief for any claim adjudicated on the merits in state

court, unless one of the exceptions listed in § 2254(d) obtains."  Premo v. Moore,

131 S. Ct. 733, 739 (2011).  A petitioner seeking relief under 28 U.S.C. § 2254

must demonstrate that the state court adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as

4

determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

In reviewing directly Petitioner's claim, the Alabama Court of Criminal

Appeals wrote these words:

> We have carefully reviewed the prosecutor's entire argument. Based on that review, <u>it is clear to us that the jury would not have inferred the prosecutor's comments to be a reference to Duke's failure to testify. Nor do we believe that the prosecutor's comment was intended to be a comment on Duke's failure to testify or that it was "of such a character that the jury would naturally and necessarily take it to be, a comment on the failure of the accused to testify."</u>
> We view the prosecutor's comments regarding [the co-defendant's] testimony as argument that [the co-defendant's] testimony had been corroborated by physical evidence establishing that Randy Duke's blood was found in various locations throughout the house, instead of a single location, thus attacking the defense's contention that Duke was not involved in all of the killings. When viewed in context, the prosecutor did nothing more than present his reasonable impressions from the evidence and argue legitimate inferences therefrom. Thus, this comment was not a comment on Duke's failure to testify; it was merely an attempt by the prosecutor to establish Duke's involvement in all of the killings at various locations in the house. Given these facts, the circuit court did not err in denying Duke's motion for a mistrial.

<u>Duke</u>, 889 So.2d at 29 (internal citations omitted) (emphasis added).

Petitioner asserts that the Alabama Court of Criminal Appeals unreasonably

applied clearly established federal law by concluding that the prosecutor did not

5

comment on Petitioner's silence at trial.

Petitioner argues that, in the context of the trial evidence -- including, for instance, that the jury had "heard" from Petitioner in a recorded 911 call but not through his testimony, and that Petitioner's defense team never contested his guilt in Randy Duke's murder -- it was clear that the statement would have been understood as a comment on Petitioner's silence in violation of Griffin v. California, 85 S. Ct. 1229 (1965). Petitioner also asserts that the prosecutor ensured that the jury understood the statement was a reference to Petitioner by pointing at Petitioner during the prosecutor's closing argument.

We first address Petitioner's contention that a gesture the prosecutor made at trial ensured that the jury would understand that the prosecutor's statement referred to Petitioner.

We are limited to reviewing facts properly preserved in the trial record. At trial, Petitioner's counsel moved to have the record reflect that the prosecutor pointed to Petitioner; but defense counsel did not obtain a ruling on the motion.

Without a ruling on the motion, Petitioner's trial counsel's simple statement -- "[l]et the record reflect that the district attorney pointed straight at the defendant when he said that" -- is just an oral motion made by a lawyer; it does not establish the fact of a gesture having been made. And nothing else in the record

6

corroborates counsel's assertion: neither the trial judge nor a prosecutor mentioned the gesture or responded to counsel's statement about a gesture.

Petitioner faults the Alabama appellate court for failing to address the prosecutor's gesture in reviewing Petitioner's claim that the prosecutor commented on Petitioner's failure to testify. He argues that the state appellate court -- particularly in the light of the supposed gesture -- unreasonably applied clearly established federal law by concluding the prosecutor had not commented on Petitioner's silence. But Petitioner's counsel failed to preserve a record adequate to allow this Court (or any of the earlier reviewing courts) to review Petitioner's claim in the light of some gesture by the prosecutor. No gesture, in fact, needs to be considered.[2]

But even assuming that the prosecutor pointed to Petitioner during the closing argument, it is far from plain that such a gesture would have caused the

---

[2] A contrary rule would limit a trial judge's authority to control the trial proceedings. It would allow a party to appeal on the basis of his own assertions made at trial without the approval -- or perhaps even the knowledge -- of the trial judge. For background, see United States v. Stefan, 784 F.2d 1093, 1100 (11th Cir. 1986) (concluding "that the district court, by failing to make a ruling, implicitly overruled appellants' objection and denied their motion for a mistrial"). Cf. Birge v. State, 973 So.2d 1085, 1105 (Ala. Crim. App. 2007) ("It is well settled that, in order to preserve an issue for appellate review, a timely objection must be made in the trial court, and the court must enter an adverse ruling.").

We accept that occasionally the total circumstances (for instance, the presence in the trial transcript of agreement by opposing counsel) surrounding a lawyer's motion at trial might be sufficient to allow an appellate court to find that -- by implication -- the motion was granted by the trial court, although no ruling was stated for the record. But the state trial record seems inadequate to support, with reason, such an inference in this case and is totally insufficient to compel such an exceptional inference on the part of Alabama's courts or on our part.

jury to draw the inference that the pertinent statement -- the one about "a witness that you heard from but [that] didn't come in here and talk to you from this witness stand" -- referred to Petitioner.

The trial record -- including defense counsel's oral motion -- is completely silent about precisely when the supposed gesture was made. The statement to which Petitioner objects arose during a discourse consisting of eight separate sentences. The prosecutor advanced several different propositions in the pertinent portion of the argument[3]; the gesture -- if one was made -- could have coincided (begun and ended) with any of the prosecutor's different statements. For example, had the gesture coincided with the prosecutor's statement about the defense team "[doing] their best to call [Petitioner's co-defendant] a liar when he testified," the jury would have almost certainly interpreted the statement and gesture to be a reference to the defense team that had tried to discredit the prosecution's witness, not a reference to Petitioner. Or if the supposed gesture happened at the start of the sentence "[a]fter he shot, stabbed, and cut the throat of Randy Duke," it could

---

[3] In the pertinent portion of the prosecutor's closing argument, the prosecutor reminded the jury of earlier witness testimony, discussed the defense team's attack on the witness's credibility, recounted part of the testimony, mentioned a "witness" that the jury had heard from, and detailed how the blood of Randy Duke had been tracked through the house. Defense counsel later objected that the prosecutor had "pointed straight at the defendant when he said that." Closing Argument Transcript 7 (emphasis added). But counsel did not specify when the gesture had occurred, and "that" had many different possible antecedents, considering the prosecutor's argument overall.

8

have suggested that Petitioner "took Randy Duke's blood with him throughout that house" after killing Randy Duke: no comment on Petitioner's silence at trial.

In other words, multiple interpretations of the trial record are possible, even when some gesture is (for the sake of discussion) assumed. Without a more specific descriptive statement in the record of the supposed gesture -- precisely what was done and specifically when it was done relative to the words spoken -- we cannot say that the Alabama appellate court's interpretation of the prosecutor's argument was unreasonable even in the light of the supposed gesture. See Wainwright v. Goode, 104 S. Ct. 378, 382-83 (1983) (writing that because "[a]t best, the record is ambiguous" and more than one "conclusion[] find[s] fair support in the record," the federal appellate court "erred in substituting its view of the facts for that of the [state court]"). "[Section] 2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Bell v. Cone, 125 S. Ct. 847, 853 (2005) (internal citations and quotation marks omitted). To the extent multiple interpretations of the facts may exist, the Alabama state court's determination of the facts about the closing argument is not unreasonable.[4] See Yarborough v.

---

[4] Having concluded that the state court's interpretation of the pertinent argument is reasonable, we do not examine other interpretations that might exist and might render the state court's determination on law unreasonable: for example, a supposition that a pointing coincided with the statement about "a witness that [the jury] heard from." Even if Petitioner's contended-

9

Alvarado, 124 S. Ct. 2140, 2150 (2004) ("These differing indications lead us to hold that the state court's application of [Supreme Court precedent] was reasonable.").

Most important, the simple statement (that is, one not tied to a pointing gesture) that "there's a witness that you heard from but he didn't come in here and talk to you from this witness stand" could -- in the context of the whole closing argument -- easily have referred metaphorically to the blood of a victim, Randy Duke.[5]  The Alabama appellate court so found and concluded.  This determination

_____

for factual interpretation found fair support in the record -- and we do not decide that this situation exists here -- we cannot substitute our independent view of the facts for that of the state appellate court.  See Wainwright, 104 S. Ct. at 383.

[5] Freely-spoken English turns out often to be imprecise, allowing for interpretation and some choice of meaning.  For example, about the pronoun "he," its use, even at the end of the Twentieth Century when this trial took place, did not in English grammar always refer to a male person.  See, e.g., Wilson Follett (revised by Erik Wensberg), Modern American Usage 31 (revised ed. 1998) ("For centuries readers have assumed that the forms of the pronoun he . . . referred to both males and females.").  Among other possibilities, "he" also could easily refer to a thing that was personified: such as Randy Duke's blood evidence.  See 7 Oxford English Dictionary 34 (2d ed. 1989) (defining "he" as "[o]f things not sexually distinguished . . . [t]hings personified as masculine").  Blood evidence could, in turn, be referred to figuratively as a witness in a trial.  A "witness" in English usage need not be a person.  See 20 id. at 465 (defining "witness" as "[s]omething that furnishes evidence or proof of the thing or fact mentioned").

And even the word "heard" -- the past participle of the verb "hear" -- in English need not rely on a sound (such as, a human voice) as a basis for the verb's correct usage; for example, the phrase "that you heard from" can properly mean "that you learned from" or "that you received information from."  See 7 id. at 57. (defining "hear" as "[t]o be informed, learn; to receive information . . .").

At issue in this appeal is not the carefully-edited text of a scholarly-written law review article or something of that sort.  The pronoun "he" in this orally-delivered closing statement in a state murder trial could reasonably have stood, and did stand, for different persons (and very possibly things) at different times in the course of the prosecutor's talking.  The state appellate court's interpretation of what the prosecutor said, meant, and was understood to mean is within

10

is a reasonable one on whether a reference to Petitioner was intended at all by this sentence and, even more so, on whether the statement amounted to a direct reference suggesting that the jury draw an inference of guilt from Petitioner's silence. See Lakeside v. Oregon, 98 S. Ct. 1091, 1094-95 (1978) (noting that the Griffin Court was "concerned only with adverse comment"). In the context of the prosecutor's closing argument, the pertinent statement is not the kind of compelled self-incrimination barred by clearly established federal law. See id. at 1094-95.

## III. CONCLUSION

"[A] presumption of finality and legality attaches to [a] conviction and sentence" after the conviction and sentence have been upheld on direct review. Barefoot v. Estelle, 103 S. Ct. 3383, 3391-92 (1983), superseded on other grounds by statute, 28 U.S.C. § 2253(c)(2); see also Parke v. Raley, 113 S. Ct. 517, 523 (1992) (noting the "deeply rooted . . . 'presumption of regularity' that attaches to final judgments"). Overcoming this presumption to obtain relief under section 2254 requires Petitioner to show the state court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable

---

the range of reasonable, both legally and factually.

11

application of, clearly established Federal law, as determined by the Supreme Court" or "an unreasonable determination of the facts." Petitioner has failed to do so. Under these circumstances, we cannot conclude that the state court's adjudication of Petitioner's claim violated clearly established federal law. As a result, Petitioner is entitled to no relief under section 2254.

AFFIRMED.

WILSON, Circuit Judge, dissenting:

Attempting to bolster the credibility of Mark Duke's cooperating co-defendant, the prosecutor argued the following to the jury:

> [Duke's co-defendant] told the truth, ladies and gentlemen, and here is how we know it, there's a *witness* that you heard from but *he* didn't come in here and talk to you from this witness stand. After *he* shot, stabbed, and cut the throat of Randy Duke, *he* took Randy Duke's blood with him throughout that house.[1]

In doing so, the prosecutor impermissibly commented on Duke's decision not to testify, in violation of his Fifth Amendment right against self-incrimination.

The majority is willing to accept the State's explanation that the "he" the prosecutor was referring to was not really Mark Duke but was Randy Duke's "blood." It is willing to accept that the "blood" is a male "witness" that the jury "heard from."[2] It is willing to accept that the prosecutor used "he" in one sentence to refer to blood and "he" in the next sentence to refer to Mark Duke, without ever

---

[1] Mark Duke, a juvenile, admitted to killing Randy Duke, his father. Mark Duke's defense at trial was that he killed only his father, and his co-defendant Brandon Samara alone went upstairs and killed the other three victims. *See* Ala. Code § 13A-5-40(a)(10) (providing that the murder of two or more persons pursuant to one scheme or course of conduct is a capital offense).

[2] Mark Duke was the only witness whom the jury "heard" from somewhere other than the witness stand, as the jury heard Mark Duke speak when the State played his 911 call for the jury. The prosecutor's statement immediately followed his urging the jury to listen to Mark Duke's voice on that 911 call.

13

indicating any possible change of subject. This makes no sense because it would mean that Randy Duke's blood "shot, stabbed, and cut the throat of Randy Duke" and that Randy Duke's blood took itself "throughout the house." The majority accepts this story even though the State could not consistently or coherently articulate such an argument in the moments after the comment was made, and despite the fact that the prosecutor who spoke it did not dispute that he was referring to Duke. I respectfully part company with my colleagues in accepting this logic.

I do not see how the jury could have possibly interpreted this statement as anything but a comment on Mark Duke's failure to testify. Accordingly, I dissent.

I.

Under AEDPA, we may grant habeas relief to a state prisoner, whose claim has been adjudicated on the merits in state court, if the state court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A criminal defendant's Fifth Amendment right against compelled testimony, as established by *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229 (1965), and its progeny, is violated if a prosecutor (1) makes a statement that was "manifestly

14

intended to be a comment on the defendant's failure to testify" or (2) *makes a statement that "was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."* See Isaacs v. Head*, 300 F.3d 1232, 1270–71 (11th Cir. 2002) (emphasis added) (quoting *United States v. Knowles*, 66 F.3d 1146, 1162–63 (11th Cir. 1995)) (applying this standard in the § 2254(d)(1) context). "The question is not whether the jury possibly or even probably would view the remark in this manner, but whether the jury *necessarily* would have done so." *Id*. at 1270. Importantly, "[t]he comment must be examined in context, in order to evaluate the prosecutor's motive and to discern the impact of the statement." *Id*.

The Alabama Court of Criminal Appeals correctly identified that standard when it analyzed Duke's claim. Accordingly, we may not disturb its determination unless its application of the law to the facts in Duke's case was objectively unreasonable. *See Williams v. Taylor*, 529 U.S. 362, 409–10, 120 S. Ct. 1495 (2000). The Alabama court's application of federal law was objectively unreasonable, even under the highly deferential review standard set forth in AEDPA.

## II.

Looking no further than the prosecutor's spoken words, I cannot join the

15

majority's conclusion that this statement is not a reference to Duke's decision not to testify. "[T]here's a *witness* that you heard from but *he* didn't come in here and talk to you from this witness stand. After *he* shot, stabbed, and cut the throat of Randy Duke, *he* took Randy Duke's blood with him throughout that house." (emphasis added). For convenience, I will refer to the first sentence of the statement as the "referential sentence" and the second as the "defining sentence." I will first explain why I believe the interpretation accepted by the majority makes no sense. Next, I will elaborate on what I believe to be the only objectively reasonable interpretation of the prosecutor's statement.

## A.

The majority's conclusion requires the victim's blood to be a male "witness" that the jury "heard from." The majority ultimately finds, "the mere statement that 'there's a witness that you heard from but he didn't come in here and talk to you from this witness stand' could easily have referred metaphorically to the blood of the victim." In isolation, this forced interpretation may not be unreasonable. But we must consider the statement in the context in which it was made. *See Isaacs*, 300 F.3d at 1270. If we assume the victim's blood is the "witness" in the referential sentence, the defining sentence would not make sense. It would necessarily read: "After [Randy Duke's blood] shot, stabbed, and cut the throat of

16

Randy Duke, [Randy Duke's blood] took Randy Duke's blood with him throughout that house." That interpretation must follow because the prosecutor continues to use the pronoun "he" without introducing an antecedent other than "witness." I cannot go along with the majority's determination that such a conclusion is reasonable.

B.

Rather than adopt a strained interpretation of the facts, I believe that a "jury would naturally and necessarily" interpret the statement as an adverse "comment on the failure of the accused to testify." *United States v. Thompson*, 422 F.3d 1285, 1299 (11th Cir. 2005) (quoting *Knowles*, 66 F.3d at 1162–63). The prosecutor quite clearly asked the jury to conclude that Duke participated in each of the murders because Duke did not testify and Samara did.

This interpretation starts from the undisputed fact that Mark Duke killed Randy Duke. Therefore, Mark Duke is necessarily the "he" referred to in the defining sentence—no one disputes that. The prosecutor's uninterrupted statement referenced a "witness" and then referred back to that "witness" by using "he" three times. The last two uses of "he" undisputedly refer to Duke, and there is no other antecedent to which "he" could refer. Accordingly, the "witness" that did not testify is Duke. This interpretation is the only possible conclusion because (1)

17

Duke is male, and (2) he did not testify from the witness stand, but (3) the jury "heard from" him via the 911 tape. Furthermore, this conclusion gives the entire statement cognizable meaning because it is undisputed that Duke is the "he" in the defining sentence. Based on the plain language, the only possible conclusion is that the prosecutor was referring to Duke as the witness who did not testify.

### III.

After the prosecutor commented on Mark Duke's decision not to testify, his counsel objected as follows:

> Let the record reflect that the district attorney *pointed straight at the defendant* when he said that. That is the most direct comment on a defendant's failure to testify I have ever seen."

The trial judge denied the motion for a mistrial.

Even though it was not disputed at trial that the prosecutor physically pointed at Mark Duke when making this statement, the majority concludes that in the absence of a specific acknowledgment by the trial judge, the statement is "just an oral motion made by a lawyer; it does not establish the fact of a gesture having been made." Majority Op. at 6. In other words, since the trial judge did not say something like "the record will so reflect," we cannot accept as true that the prosecutor did point his finger at Duke when he commented on Duke's silence. Therefore, according to the majority, Duke's lawyer did not adequately preserve

18

the record for appellate and collateral review of this issue.

First, an improper comment on a defendant's right to remain silent need not be accompanied by a "pointing gesture" to violate the Constitution. I am aware of no precedent that would establish such a pre-condition, nor is the majority able to cite any such precedent. Duke's Fifth Amendment right was violated by the comment alone, even in the absence of a "pointing gesture."

Second, neither the trial judge nor the prosecutor contested the defense attorney's statement placed in the record.[3] I can hardly conceive of a trial judge permitting a defense lawyer to inaccurately portray courtroom proceedings so demonstrably, without a rebuke, if the gesture did not occur. What is telling is that no one—not the trial court, not the prosecutors, not the Alabama Court of Criminal Appeals, not the magistrate or district judges in the habeas proceedings below, and not even the State in its brief—ever raised the possibility that the pointing gesture did not occur until the State was pressed about it at oral argument on this appeal.

Finally, neither the Federal Rules of Evidence nor common practice require any explicit ratification by the trial judge when an officer of the court records a non-verbal occurrence of this nature in the courtroom. *See Favre v. Henderson*,

---

[3] "[I]f opposing counsel disagrees [with the defense counsel's description of a gesture], she should so state, and silence is likely to be taken as assent." *See* Christopher B. Mueller & Laird C. Kirkpatrick, Evidence Under the Rules 17 (6th ed.2008) (explaining the process for making a record for appellate review).

19

464 F.2d 359, 365–66 n.12 (5th Cir. 1972). *See also United States v. Burrell*, 496

F.2d 609, 611 (3d Cir. 1974); *Al-Timimi v. Jackson*, 608 F. Supp. 2d 833, 837

(E.D. Mich. 2009).[4]

Paradoxically, after discussing the matter at length, the majority ultimately

concludes that "[n]o gesture, in fact, needs to be considered." Majority Op. at 7.

IV.

Returning to the prosecutor's statement, and looking beyond the words to its

context, as we are required to, the jury necessarily understood it to be a reference

to Duke's failure to testify. Immediately preceding the comment at issue, the

prosecutor repeatedly mentioned the 911 tape with Duke's voice. As jurors had

that "testimony" from Duke on the forefront of their minds, the 911

tape—containing audio from a male witness that did not testify, i.e., Duke—would

necessarily be the first evidence recalled after the prosecutor concluded his remark.

---

[4] The majority cites two cases to support its conclusion that the prosecutor's gesture—placed in the record by defense counsel but not explicitly acknowledged by the trial court—need not be considered. Majority Op. at 7 n.2. The first stands for the proposition that a motion for a mistrial that is never explicitly ruled on is implicitly denied. *United States v. Stefan*, 784 F.2d 1093, 1100 (11th Cir. 1986). The second merely states that a party must make an objection to preserve an issue for appellate review. *Birge v. State*, 973 So.2d 1085, 1105 (Ala. Crim. App. 2007). As is clear from those brief descriptions, *Stefan* and *Birge* address completely different circumstances than we are faced with here. Duke's defense counsel moved for a mistrial and preserved the record by clearly describing the events that transpired in the courtroom. As *Favre*, *Burrell*, and *Al-Timimi* demonstrate, counsel's narrative—for the sole purpose of creating a record—should be taken as accurate when neither the trial judge nor opposing counsel articulate any disagreement. Any holding to the contrary unnecessarily complicates trial proceedings in this Circuit.

Duke is the only actual person that the jury "heard" from somewhere other than the "witness stand."

Moreover, the State was unable to maintain a consistent theory on what the prosecutor meant. Immediately after the comment and the defense's objection, a different prosecutor presented two conflicting explanations as to what the statement meant. Specifically, (1) the "witness" was Randy Duke, or (2) the "witness" was Randy Duke's blood.[5] The prosecutor who made the remark offered no explanation and did not refute that the "witness" was Duke. The trial judge denied the motion for a mistrial, but he did not specify the grounds for that decision. Furthermore, the State, before this Court on appeal, would not adopt either of the theories presented.

## V.

The state court's determination that the prosecutor's statement was not a

---

[5] The prosecutor first said:

> Judge, this is very clear that where the father's blood throughout the house is evidence that the State can presume to argue in the light most favorable to the State. . . . But in regard to father's blood, the father's blood is spread throughout the house. That's how it is attached to this defendant. This defendant in opening statement admitted to killing his father. It's a real fair conclusion to say you're going to get blood on you if you cut somebody's throat. Where that blood goes then is a very fair argument.

Shortly thereafter, the prosecutor said, "He was talking about the daddy . . . . Said the man that can't testify can't be here. . . . He said the witness wasn't able to testify about having his blood scattered throughout the house."

comment on Duke's failure to testify at trial is objectively unreasonable. The Alabama Court of Criminal Appeals unreasonably applied *Griffin* and its progeny, because the jury naturally and necessarily would have understood the prosecutor's statement to be a comment on Mark Duke's failure to testify. There is no question that the prosecutor's comment was used as substantive evidence of Mark Duke's guilt.

I understand and respect the great deference AEDPA gives state court determinations, but I also recognize that Congress preserved the federal judiciary's ability to grant habeas relief when there has been an "unreasonable application of clearly established federal law." Although we give great deference to a state court's determination of a federal constitutional issue, the federal courts are not required to accept any non-sensical explanation concocted to support a merits determination. AEDPA deference does not eliminate review by federal courts, but rather it explicitly preserves it. "[T]his case can withstand review only if deference amounts to abdication, if [] discretion is unbridled, and if 'unreasonable' is a hollow term." *United States v. Irey*, 612 F.3d 1160, 1165 (11th Cir. 2010) (en banc). The Alabama Court of Criminal Appeals's interpretation and ultimate determination is unreasonable.

I would reverse the judgment of the district court and remand with an

instruction to the State to file a transcript of the entire trial proceedings—which we

do not have—so that the district court may conduct a harmless error analysis in the

first instance.[6]

---

[6] *Griffin* violations are subject to constitutional harmless error review. *See Chapman v. California*, 386 U.S. 18, 24–26 (1967); *Marsden v. Moore*, 847 F.2d 1536, 1548–49 (11th Cir. 1988).