UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph STEFAN, Irvin Freedman,
Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Irvin FREEDMAN,
Defendant-Appellant.

Nos. 83–5590, 83–5687.

United States Court of Appeals,
Eleventh Circuit.

March 20, 1986.

Roy E. Black, Black & Furci, P.A., Miami, Fla., William A. Meadows, South Miami, Fla., for defendants-appellants.

Ronald A. Dion, Entin, Schwartz, Dion & Sclafani, North Miami Beach, Fla., for Freedman.

Lorraine C. Holmes, Miami, Fla., for Stefan.

J. Brian McCormick, Sp. Atty., Fort Lauderdale, Fla., Paul J. Larkin, Jr., Washington, D.C., Vincent L. Gambale, William C. Bryson, Dept. of Justice, Crim. Div., Washington, D.C., for plaintiff-appellee.

Before HATCHETT and CLARK, Circuit Judges, and ALLGOOD [*], Senior District Judge.

### CORRECTED OPINION

HATCHETT, Circuit Judge:

In this case the appellants seek reversal of criminal convictions for numerous criminal offenses, including misapplication of bank funds, wire fraud, mail fraud, interstate transportation of stolen property, and racketeering. We affirm.

### FACTS

This case began with an indictment charging Joseph Stefan and Irvin Freedman, the appellants, with a scheme to defraud Miami National Bank (MNB), of over $4.5 million in connection with a construction project operated by the Outrigger Club, Inc. Stefan was president of the bank. Freedman originally owned the Out-

---

[*] Hon. Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

rigger, but transferred 50 percent of his interest in the corporation to Kenneth Wilpon, a real estate investor from New York, in exchange for Wilpon's commitment to obtain refinancing for completion of the Outrigger project. Separate corporate entities were established to develop each phase of the Outrigger project: 13499 Corporation was established to develop the residential section; Biscayne South, Inc. was formed to control the commercial properties of the Outrigger; and Harbor Edge Yacht and Tennis Club, Inc. was formed to develop the marina section.

Freedman and Wilpon were successful in obtaining $4.5 million in loans from MNB for the Outrigger project. Loans were made directly to Freedman and Wilpon, to the three newly-formed Outrigger corporations which Freedman and Wilpon controlled, to several other companies controlled by Freedman and Wilpon (including subcontractors on the Outrigger project), and to straw borrowers.

Title 12 U.S.C. § 84 prohibits a national bank from lending more than 10 percent of its capital in surplus account to any one borrower or group of related borrowers. MNB's legal lending limit was $580,000. Despite this limitation, Stefan either approved or obtained approval for over $4.5 million in loans for the Outrigger project.

After a three-month trial, the district court acquitted Stefan of a RICO conspiracy charge before sending the case to the jury. The jury subsequently convicted Stefan of five counts of misapplication of bank funds, two counts of wire fraud, two counts of making false statements to a federal bank examiner, one count of mail fraud, one count of interstate transportation of stolen property, and one count of filing a false bank report. Stefan received concurrent sentences of five years probation and 1,000 hours of community service on each count. The jury convicted Freedman on the RICO conspiracy count, nine counts of misapplication of bank funds, two counts of wire fraud, one count of interstate transportation of stolen property, two counts of bankruptcy fraud, and two

counts of making false statements on his income tax returns. Freedman received concurrent sentences in the aggregate of seven years.

The issues we resolve regard sufficiency of the evidence, admission of evidence, prosecutorial misconduct, indictment sufficiency, and transcript deficiencies.

## SUFFICIENCY OF THE EVIDENCE

Stefan contends that the evidence adduced at trial is insufficient to support his convictions. Freedman adopts Stefan's argument on the misapplication of bank funds charges and contends that he cannot be convicted of aiding and abetting misapplication of bank funds because the evidence is insufficient to support Stefan's convictions.

In reviewing challenges to sufficiency of the evidence, we must view the evidence in the light most favorable to the government and affirm the convictions if a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *Glasser v. United States*, 315 U.S. 60, 79, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942); *United States v. Cruz*, 765 F.2d 1020, 1025 (11th Cir.1985). It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

██ Under this standard, we find the evidence sufficient to support Stefan's convictions on all counts. The jury convicted Stefan of five counts of misapplication of bank funds under 18 U.S.C. § 656 which prohibits bank officers from "willfully misapplying" bank funds. In order to convict under this statute, the government must prove that the accused knowingly participated in a deceptive or fraudulent transaction. *United States v. Adamson*, 700 F.2d 953 (5th Cir. Unit B 1983). The required intent, i.e., knowledge, may be inferred "from the defendant's reckless disregard

of the interest of the bank ..." *United States v. Adamson,* 700 F.2d at 965.

Stefan contends that he lacked the requisite criminal intent and that a reckless disregard of a bank's interest cannot be inferred from his actions which amounted only to "bad judgment calls."

The jury, however, had before it evidence that: (1) Stefan knew that all of the borrowers to whom he made loans were bad credit risks; (2) Stefan knew that all of the loans were for the financially troubled Outrigger project; (3) Stefan did not look to several of the Outrigger borrowers to repay their loans; and (4) Stefan tried to conceal the extent of his Outrigger related transactions.

■ Although the evidence was not overwhelming, a rational jury could conclude beyond a reasonable doubt that Stefan misapplied Miami National Bank funds by acting in reckless disregard of the bank's interests. Stefan's convictions for wire fraud, making false statements to a federal bank examiner, mail fraud, interstate transportation of stolen property, and filing false bank reports all emanated from his misapplication convictions. Ample evidence exists to support the jury's guilty verdicts on all of the other counts as well.

Since we find the evidence sufficient to support Stefan's convictions, Freedman's argument that he cannot be convicted of aiding and abetting because the proof failed to establish that Stefan misapplied bank funds, must fail. Freedman also argues "that the evidence presented at trial did not sufficiently establish [that he had] knowledge of the alleged illegal acts of bank personnel nor his desire to participate therein."

■ The jury had before it evidence that Freedman arranged straw borrowers, prepared loan applications, and discussed financing for the debt-ridden Outrigger project with MNB bank officials. A reasonable jury could have found from the evidence that Freedman knowingly aided and abetted the misapplication of MNB funds. We therefore affirm Freedman's

convictions for violating 18 U.S.C. § 656 as an aider and abettor.

## EVIDENCE AND INSTRUCTIONS REGARDING VIOLATIONS OF 12 U.S.C. § 84

Stefan and Freedman next contend that the district court erred in allowing the introduction of evidence concerning infractions of 12 U.S.C. § 84, a civil regulatory banking statute, and by instructing the jury that it could infer criminal intent from infractions of that statute.

The district court allowed the government to introduce testimony concerning infractions of 12 U.S.C. § 84; it allowed the introduction of charts designed to show how the Outrigger related loans contravened the statute; and it allowed reference to section 84 violations in opening and closing statements. The court's instructions also focused the jury's attention on section 84.

Stefan and Freedman rely on *United States v. Christo,* 614 F.2d 486 (5th Cir. 1980), for the proposition that evidence of a violation of a civil regulatory statute is irrelevant and prejudicial in a criminal case based upon misapplication of bank funds. In *Christo,* the government contended that the defendants' violation of 12 U.S.C. § 375a, a civil regulatory banking statute limiting the amount that a national bank may lend its executive officers, also constituted violations of 18 U.S.C. § 656, the criminal misapplication statute. The *Christo* court reversed the convictions, holding that the instructions as well as the "whole tenor of the trial" constituted plain error. The court stated: "A conviction, resulting from the government's attempt to bootstrap a series of checking account overdrafts, a civil regulatory violation, into an equal amount of misapplication felonies, cannot be allowed to stand." *Christo,* 614 F.2d at 492. The court also stated that "[a]fter examining the record of the trial, one questions whether Christo was found guilty of willful misapplication with intent to injure and defraud the bank or ... for

overdrafting his checking account." *Christo*, 614 F.2d at 492.

For the reasons set forth below, we disagree with Stefan and Freedman's conclusion that *Christo* compels a reversal of their convictions.

### 1. Evidence Regarding Section 84 Violations

■ *Christo* forbids introducing evidence of civil banking statute violations solely for the purpose of proving criminal misapplication; however, it does not hold that such evidence can never be introduced in a criminal misapplication case. In other words, it is not always error to allow evidence of civil banking statute violations in a criminal misapplication trial. If the evidence of civil violations is introduced for purposes other than to show criminal misapplication and the evidence is not presented in such a way that the jury's attention is focused on the civil violations rather than the criminal ones, there is no error.

In *Christo*, the government's theory of prosecution was that the appellants' violations of 12 U.S.C. § 375a, a civil statute, also constituted violations of section 656, the criminal misapplication statute. The court stated: "The government's evidence and argument concerning violations of 375a impermissibly infected the very purpose for which the trial was being conducted—to determine whether Christo willfully misapplied bank funds with an intent to injure and defraud the bank, not whether Christo violated a regulatory statute...." *Christo*, 614 F.2d at 492.

■ In this case, the government did not base its prosecution for misapplication of bank funds on Stefan's alleged violations of civil statute 12 U.S.C. § 84. Rather, the government sought to show that Stefan violated the misapplication statute by making loans to straw borrowers for the Outrigger project knowing that the borrowers lacked the capacity to repay the loans. Evidence of civil violations was introduced, but not to show that such violations proved criminal misapplication.

The government argues that it would have been difficult, if not impossible, for the jury to get a proper understanding of the case without reference to section 84. The government sought to show that one reason Stefan dealt with straw borrowers was to avoid the limitation of section 84. The record indicates that Stefan was concerned about possible section 84 infractions and that he discussed the statute with other MNB officials and bank examiners. Pertinent evidence would be lost in this and other cases if we imposed a blanket prohibition against proof relating to infractions of civil banking statutes in criminal misapplication cases.

*Christo* does not compel such a result. The government's evidence and argument concerning infractions of section 84 did not "impermissibly infect the purpose for which the trial was being conducted." We hold that the district court did not err in allowing introduction of evidence concerning section 84 infractions.

### 2. Instructions Regarding Section 84 Violations

Again relying on *Christo*, appellants contend that the district court erred in instructing the jury that it could consider infractions of section 84 in evaluating intent to misapply funds under 18 U.S.C. § 656.

The district court in *Christo*, after dwelling on the government's theory of prosecution equating violations of civil statute section 375a with violations of section 656, the criminal misapplication statute, charged the jury in pertinent part:

[I]f there are a series of loans made in violation of [section 375(a)'s] $5,000 limitation, you may decide, and *must decide* from the evidence whether or not these loans taken individually or cumulatively constitute a willful disregard for the welfare of the bank and, as such, a misapplication of bank funds, which if accompanied by an intent to injure or defraud, would constitute a criminal violation under section 656.

The *Christo* court held that the instructions constituted error. In reaching its conclusion, the court relied on *United States v. Steinman*, 172 Fed. 913 (3d Cir. 1909), where the Third Circuit held, in a case involving bank overdrafts, that it was reversible error for the district court to instruct the jury that unlawful acts of maladministration (the overdrafts exceeded civil lending limitations) evidenced an intent which warranted conviction under the misapplication statute. *Christo*, 614 F.2d at 486 (citing *Steinman*, 172 F. at 916).

██ The *Christo* court felt that the jury charge in that case ran afoul of *Steinman's* prohibition against instructions that unlawful acts of maladministration evidence criminal intent to misapply bank funds under section 656. The pertinent part of the instructions in this case states:

Now, this next instruction is in the portion that relates to section 656, but it is actually applicable anywhere that it may have occurred in the presentation of evidence on the charges. You have heard reference at various times during the trial to title 12 U.S.C. § 84, the civil lending limit statute. It is a civil statute or regulation which limits the amount that a federally regulated bank may lend to a borrower or related group of borrowers. Therefore, in violations of section 84 a loan should not be considered by you as violations of the criminal law. You may consider, however, evidence of or violations of section 84 as you would any other evidence in determining whether or not the defendants had the required intent to violate the criminal laws charged in this indictment.

The instructions in this case, clear, cogent, and markedly different from those given in *Christo*, do not contravene the *Steinman* prohibition; therefore, they do not constitute reversible error. Given the tenor of the trial and instructions in *Christo*, the jury could have felt *compelled*, like the jury in *Steinman*, to infer criminal intent to misapply funds based on evidence of civil banking statute violations. The jury could not have felt so compelled in this case. First, the tenor of this trial was different from that in *Christo*. Second, in this case, the district court made it clear that the jury did not have to infer criminal intent to misapply funds because of section 84 infractions. Rather, after stating that infractions of section 84 should not be considered as violations of the criminal law, the court instructed the jury that it could consider this evidence as it would any other evidence in determining whether the defendant had the required intent to misapply funds.

We find no error in the district court's instructions.

## PROSECUTOR'S IMPROPER CLOSING ARGUMENT

Stefan and Freedman also contend that their convictions should be reversed because the prosecutor made improper prejudicial remarks during closing argument. During the summation to the jury, co-defendant Greenfield's counsel argued that the grand jury only heard the "prosecution's side of the matter" and speculated about differences in the evidence presented to the grand jury and at trial. In the rebuttal phase of the prosecutor's closing argument, the prosecutor stated:

There is an accusation, by implication at least, that this case is a fabrication. South Florida is a big area. There is a lot of crime in South Florida. Is it reasonable to think that the government would fabricate a case just to go to trial with all of the crimes in this area?

Appellants' counsel immediately objected and moved for a mistrial. The district court reserved ruling on the matter, but never made a ruling. Neither appellant thereafter asked for a ruling; neither raised the issue again until on appeal.

The government argues that under these circumstances the appellants failed to preserve the objection; therefore, the claim must be judged under the plain error standard of Federal Rule of Criminal Procedure 52(b). Stefan and Freedman argue that the plain error standard is not applicable because their motion was made at the "very end of the trial" and that "there was no later time at which the motion would normally be raised."

■ We conclude that the district court, by failing to make a ruling, implicitly overruled appellants' objection and denied their motion for a mistrial. Under these circumstances, reversal is warranted if the prosecutor's remarks were (1) improper, and (2) prejudicial to a substantial right. *United States v. Rodriguez,* 765 F.2d 1546, 1559 (11th Cir.1985); *United States v. Bascaro,* 742 F.2d 1335, 1353 (11th Cir.1984).

■ In this case, the prosecutor's question: "Is it reasonable to think that the government would fabricate a case with all the crime in this area?" was improper. This court, and others, have repeatedly chastised prosecutors for arguing or even suggesting that "the government only prosecutes guilty people." This line of argument is forbidden because it implies that the prosecutor reached the determination that the defendant is guilty before trial and that the jury should weigh this fact in making its determination. *United States v. Garza,* 608 F.2d 659 (5th Cir.1979).

■ Notwithstanding our condemnation of the prosecutor's remarks, we do not find that reversal is required. To properly assess the prejudicial quotient of improper remarks, we must review them in context and assess their probable impact on the jury. *Rodriguez* at 1560 (citing *United States v. Young,* —— U.S. ——, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). We find it significant that the improper remarks occurred during rebuttal. Here, as in *Young,* the prosecutor made improper remarks in response to improper remarks made by opposing counsel. In *Young,* the Supreme Court chastised the prosecutor for expressing his personal opinion as to the defendant's guilt, but concluded that "any potential harm from this remark was mitigated by the jury's understanding that the prosecution was countering defense counsel's repeated attacks on the prosecution's integrity and the defense counsel's argument that the evidence established no crime." *Young,* —— U.S. at ——, 105 S.Ct. at 1048, 84 L.Ed.2d at 14.

Likewise, in the case before us, the harm inflicted by the prosecutor's improper remarks was lessened by the jury's understanding that the prosecutor's remarks were an invited response. Appellants were not prejudiced by the prosecutor's remarks, therefore, reversal is not required.

## RICO CONSPIRACY CHARGE TAINT

Count I of the indictment charged appellants Stefan and Freedman, among others, with a RICO conspiracy. Racketeer Influenced and Corrupt Organizations, 18 U.S.C. §§ 1962. At the close of the evidence, the district court acquitted Stefan on the RICO count. The court removed Stefan's name from the charging portion of the RICO count but did not remove his name from paragraph five of that count because that paragraph detailed the allegedly fraudulent scheme on which other counts were based. Stefan objected to language in the RICO count that the paragraph five acts were "part of the conspiracy" on the grounds that the phrase could cause the jury to believe that he was still a part of the conspiracy. The district court instructed the jury to: "Examine paragraph [5] of Count I to ascertain or determine whether a scheme or artifice to defraud existed,

although, as to the defendant, Joseph Stefan, in doing so, the reference should not be in the context of the conspiracy charged in Count I."

Stefan argues that the instructions did not remove the taint and that the "confusion engendered by leaving [his] name in a paragraph of the RICO conspiracy charge, which was alleged to be 'part of the conspiracy', was enhanced in the government's closing argument." The relevant portion of that argument stated:

> As is alleged in the indictment, the manner and means of carrying out the scheme and artifice to defraud, this plan to defraud, if you will, will be the identical matter and means set forth under Count I, paragraph [5]. So that the manner and means of carrying out the scheme and artifice to defraud are similar to the manner and means of carrying out the conspiracy, the ends which perhaps are difficult.

▬ We have noted before that one of the hazards of a RICO conspiracy count is that when the government is unable to sustain a conviction under this statute, it will have to face the claim that the prejudicial effect of trying the defendant with the label of "racketeer" tainted the conviction of an otherwise valid count. *United States v. Kabbaby*, 672 F.2d 857, 862 (11th Cir.1982) (quoting *United States v. Guiliano*, 644 F.2d 85 (2d Cir.1981)). "That claim, of course, need not always or even often prevail...." *Guiliano*, 644 F.2d at 89.

In determining whether such a claim prevails, important factors are: (1) Whether the jury meticulously sifted the evidence; and (2) whether the appellant was prejudiced by a spill over of evidence relating to other counts or defendants. *Kabbaby*, 672 F.2d at 862.

▬ Stefan contends that the jury did not meticulously sift the evidence because the district court granted acquittals on three of the counts on which the jury convicted him. It is not necessary that the court agree with jury verdicts on all counts to determine that the jury carefully weighed the evidence. The fact that the jury acquitted Stefan on seven other counts, however, demonstrates to us that the jury meticulously sifted the evidence.

▬ Neither was Stefan prejudiced by a spillover of evidence relating to other counts or defendants. Stefan's name was removed from the charging portion of the RICO count and the district court's instruction was sufficient to remove the danger that Stefan would be associated with the RICO conspiracy. Therefore, we hold that the RICO charge against Stefan did not taint his convictions.

## 18 U.S.C. § 1001 CHARGE

Stefan also contends that his false statement conviction on Count XIV must be reversed because the indictment failed to allege that the 18 U.S.C. § 1001 offense was committed "willfully." Title 18 U.S.C. § 1001 punishes anyone within the jurisdiction of any United States agency who "knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or any device, a material fact, or makes any false, fictitious, or fraudulent statements or representations...." Clearly, "willfullness" is an essential element of the offense. *See United States v. Mekjian*, 505 F.2d 1320 (5th Cir.1975).

Count XIV of Stefan's indictment only charged that Stefan "knowingly made a false, fictitious and fraudulent statement ... in violation of Title 18 U.S.C. § 1001."

▬ It is axiomatic that, to pass constitutional muster, an indictment must contain every element of the offense charged. *United States v. Varkonyi*, 645 F.2d 453 (5th Cir.1981). *See also, Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). The law does not compel that the indictment track the statutory language. *United States v. Chilcote*, 724 F.2d 1498 (11th Cir.1984). "Moreover, when the indictment specifically refers to the statute on which the charge was based, the statutory language may be used to determine whether the defendant received

adequate notice." *Chilcote*, 724 F.2d at 1505.

 ■ .In this case, Count XIV specifically refers to 18 U.S.C. § 1001. Therefore, Stefan cannot claim that he did not receive adequate notice of the charges against him. Furthermore, the analytical distinction between the mens rea requirement in 18 U.S.C. § 1001 is so slight in this instance, that even if Count XIV failed to refer to the statute, Stefan would not be heard to say that the indictment was insufficient to inform him of the charges against which he had to defend. The language of Count XIV did not track that of 18 U.S.C. § 1001; however, practical, rather than technical considerations govern the validity of an indictment.

## RECORD OMISSIONS

Upon conclusion of the trial in this case, Stefan retained new counsel and asked the court reporter to prepare the transcript for appeal. During this preparation, the court reporter discovered that the transcripts of a one hour and forty-five minute bench conference held on February 3, 1983, were missing.

 ■ Stefan argues that because these transcripts were lost, he has been foreclosed the opportunity to examine a significant portion of the trial for error; therefore, his conviction should be reversed. The Court Reporter Act requires that a reporter "record verbatim by shorthand or by mechanical means ... (1) all proceedings in criminal cases had in open court...." Court Reporter Act, 28 U.S.C. § 753(b) (1970). A criminal defendant has a right to a record on appeal which includes a complete transcript of the proceedings at trial. *Hardy v. United States*, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964); *United States v. Selva*, 559 F.2d 1303 (5th Cir. 1977). Some disagreement exists, however, as to how much of the record may be omitted before reversal is mandated under the Act.

Stefan relies on *United States v. Selva* which held: (1) Where the defendant is represented by the same attorney at trial and on appeal, reversal is called for only if the defendant can show that failure to record and preserve the specific portion of the trial proceedings visits a hardship on him and prejudices his appeal; but (2) where the defendant is represented by new counsel on appeal, all that need be shown is a significant and substantial omission in the transcript. *Selva*, 559 F.2d at 1303, 1305.

 ■ Much disagreement exists regarding the propriety of allowing the issue of whether omissions are significant enough to require reversal under the Court Reporter Act to turn on whether the appellant has a new lawyer or not. We need not enter that debate; even if we adopted the *Selva* standard, Stefan would not prevail on his contention. Although Stefan has a new lawyer on appeal, in the absence of special circumstances, in this very long and complex case, we deem the absence of transcripts from a one hour and forty-five minute bench conference not a "substantial and significant omission."

Notwithstanding the court reporter's guess that the conference was a "pivotal point in the case," the likelihood that Stefan was prejudiced in any way by the loss of one hour and forty-five minutes of transcripts of what the jury did not hear is small. New trials have been ordered pursuant to the Court Reporter's Act where the record lacked voir dire, opening statements, voir dire at closing statements, the government's closing argument, or the entire trial. *United States v. Selva*, 559 F.2d 1303 (5th Cir.1977); *United States v. Gregory*, 472 F.2d 484 (5th Cir.1973); *United States v. Garcia Bonifascio*, 443 F.2d 914 (5th Cir.1971); *Stephens v. United States*, 289 F.2d 308 (5th Cir.1961). The omission in this case is clearly less significant than the omissions cited, therefore, we hold that reversal is not required.

## RICO COUNT VAGUENESS

Freedman contends that the RICO conspiracy charge against him was impermissibly vague in that the enterprise charge was identified only as "a group of individuals associated in fact," without specifying the members thereof.

The grand jury charged Freedman with conspiring to violate 18 U.S.C. § 1962(c) which prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirect, in the conduct of such enterprises affairs through a pattern of racketeering activity or collection of unlawful debt." Title 18 U.S.C. § 1961(4) defines "enterprise" as "any individual, partnership, corporation, association or other legal entity and any union or group of individuals associated in fact although not a legal entity." After alleging a conspiracy to violate 18 U.S.C. § 1962(c), Count I of the indictment stated: "It was a part of the conspiracy that the defendants Irvin Freedman, Leo Greenfield, Joseph Stefan, Truman Skinner, John J. O'Connor, and Sandy C. Brous, would be employed by and associated with an enterprise, to wit a group of individuals associated in fact, which enterprise was engaged in and the activities of which affected, interstate commerce."

An indictment will be held sufficient if it (1) contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and (2) enables the accused to plead an acquittal or conviction in bar of future prosecutions for the same offense. *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575, 593 (1980); *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). The indictment in this case is adequate under this standard. It is clear that the alleged enterprise in Count I consisted of Irvin Freedman, Leo Greenfield, Joseph Stefan, Truman Skinner, John J. O'Connor, and Sandy Brous. Therefore, we hold that Count I was not impermissibly vague and affirm Freedman's conviction on that count.

### Conclusion

For the foregoing reasons, we conclude that the appellants' convictions should be affirmed in all respects.

AFFIRMED.