[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

Nos. 19-15044; 19-15165

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MANUEL R. FERNANDEZ,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:17-cr-20780-MGC-2

_____

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM, and BRASHER, Circuit Judges.

PER CURIAM:

Manuel Fernandez appeals his conviction and 75-month total sentence for conspiracy to receive bribes, in violation of 18 U.S.C. § 371, bribery, in violation of 18 U.S.C. § 201(b)(2)(C), making a false statement to a federal agency, in violation of 18 U.S.C. § 1001(a)(2), wire fraud, in violation of 18 U.S.C. § 1343, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). After careful review, and with the benefit of oral argument, we affirm.

## I.

On November 2, 2017, a federal grand jury in the Southern District of Florida returned an indictment charging Manuel Fernandez with one count of conspiracy to commit an offense against the United States, *i.e.*, receiving bribes, in violation of 18 U.S.C. § 371 (Count One), fifteen counts of bribery, in violation of 18 U.S.C. § 201(b)(2)(C) (Counts Seventeen though Thirty-One), one count of making false statements in a matter within the jurisdiction of the Federal Aviation Administration ("FAA") and U.S. Department of Transportation ("DOT"), in violation of 18 U.S.C. § 1001(a)(2) (Count Thirty-Two), two counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts Thirty-Three and Thirty-Four), and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts Thirty-Five and Thirty-Six). The indictment

sought forfeiture of any property constituting or derived from proceeds traceable to the conspiracy, bribery, and wire fraud counts.

Fernandez worked at the FAA.  The FAA oversees a vast array of businesses that operate in the aviation industry in the United States, including repair stations.  Avcom Avionics & Instruments, Inc. ("AVCOM") was a repair station based in Doral, Florida. AVCOM specialized in avionics, which are components used in the navigation of an aircraft.  The FAA employs Aviation Safety Inspectors ("ASIs") to inspect and oversee the operations of businesses and entities subject to FAA regulation.  ASIs have lead responsibility for overseeing the operations of FAA certified repair stations. The FAA employed Fernandez as an ASI in Florida from August 2007 to June 2013, when he resigned.

FAA regulations barred Fernandez from accepting outside employment with any aviation-related business in Florida, which may be subject to inspection, licensing, certification, or other official contact by the FAA.   And that included AVCOM.

From January 2010 through June 2013, Fernandez conspired with AVCOM's owners, Rolando and Patricia Suarez, to receive and accept bribes in return for Fernandez's agreement to violate his official duties with the FAA to advance AVCOM's financial interests.  Fernandez (1) enlisted a contact who worked at Delta Airlines to covertly steal confidential proprietary repair manuals owned by Delta and Honeywell, a major avionics component manufacturer, directed the stolen repair manuals to AVCOM, and concealed his conduct from FAA authorities by communicating over

private e-mail addresses with his Delta contact; (2) used his position with the FAA to access Honeywell's web portal as another means of attempting to steal Honeywell's repair manuals for AVCOM's use; (3) agreed to attempt to influence the FAA's review and approval process of AVCOM's request to add a new repair specification to its approved operations; (4) notified AVCOM of FAA inspections in advance; (5) revealed to AVCOM financial information about AVCOM's competitors to assist AVCOM in bargaining for favorable pricing in purchasing used avionics components; (6) offered to sell to AVCOM proprietary repair plans held by another business that Fernandez had on his FAA computer; and (7) proposed setting up a partnership to repair airplane glass using proprietary repair plans that Fernandez had obtained through an enforcement action on a separate business.

As part of the bribery scheme, AVCOM compensated Fernandez with items of value including cash, jewelry, clothing, Miami Heat tickets, and a four-day cruise.

Fernandez concealed both the bribery scheme and his outside employment with AVCOM from the FAA. His outside employment included marketing and promoting AVCOM's business to its existing and potential customers and serving as a point-of-contact to such customers. He received payments in one of three ways: (1) cash payments, (2) checks and bank transfers as his AVCOM salary, and (3) checks and bank transfers as his mother's AVCOM salary. AVCOM paid Fernandez about $14,900 indirectly by placing Fernandez's mother, Juana Fores, on their payroll.

Fernandez and Fores deposited the cash payments in bank accounts controlled by either Fernandez or Fores.  During an entire pay period in June 2013 when he claimed "sick leave" with the FAA, Fernandez was actually working at AVCOM.  His gross pay for the entire pay period in June 2013 was $4,052.  As a result of Fernandez taking sick leave during that pay period, his annual leave balance and corresponding pay-out after he resigned was 80 hours higher than it should have been.  To corroborate his claim of sick leave, he submitted an allegedly forged doctor's note from a page of a prescription pad stolen from a local physician.

Following a 15-day trial, a jury found Fernandez guilty on all counts.

The district court later sentenced Fernandez to a 75-month total sentence.  In calculating that sentence, the district court added two levels to the base offense pursuant to U.S.S.G. § 3C1.1(c), because Fernandez obstructed justice by knowingly suborning perjury from five family members, including testimony regarding the source of the cash deposits into the bank accounts controlled by Fernandez.  The district court also found that Fernandez should not be able to work in the airline industry or the airline parts industry as a condition of his supervised release.  Finally, the district court entered a forfeiture order of $183,730.76 against Fernandez.

## II.

We have jurisdiction under 28 U.S.C. § 1291 to review the district court's final judgments and authority to examine

Fernandez's challenges to his sentence pursuant to 18 U.S.C. § 3742(a).  And the district court had jurisdiction to enter its judgments pursuant to 18 U.S.C. § 3231.

## III.

Fernandez appeals his conviction on four grounds.  First, he contends that the district court erroneously instructed the jury as to his official duties.  Second, Fernandez argues that the district court incorrectly admitted evidence of his official duties.  Third, he avers that the district court improperly permitted the government to misrepresent trial evidence in its closing argument.  Finally, he challenges the sufficiency of the evidence on his bribery, wire fraud, and aggravated identity theft convictions.

## A.    Jury instruction regarding "official duty"

Counts 17-31 of the indictment charged Fernandez with violations of 18 U.S.C. § 201(b)(2)(C).  That statute prohibits public officials from receiving or agreeing to receive things of value in return for "being induced to do or omit to do any act in violation of the official duty of such official or person." *Id.*  The statute does not define "official duty" as used (and charged here) under this subsection.

In contrast, 18 U.S.C. § 201(b)(2)(A) prohibits receiving or agreeing to receive things of value in return for being influenced in the performance of any "official act."  "Official act" is a statutory term of art defined as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time

be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." *Id.* § 201(a)(3).

Fernandez submitted a proposed jury instruction that would have applied the definition of "official act" from our pattern instruction O5.2 to "official duty." That proposed instruction defined "official duty" as follows:

> To qualify as an "official duty," the public official must have [made a decision or taken an action] [agreed to make a decision or take an action] on a question, matter, cause, suit, proceeding, or controversy. Further, the question, matter, cause, suit, proceeding, or controversy must involve the formal exercise of governmental power. It must be similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific which requires particular attention by a public official.

The government argued below that Fernandez "is not charged with official act bribery" but instead, having violated his "official duties," "doing things that he is not authorized to do." The government urged the district court not to conflate "official duty," as charged in this case under § 201(b)(2)(C), with "official act," as used in § 201(b)(2)(A). The district court rejected Fernandez's proposed instruction. Our task here is to review the correctness of that decision.

We review the legal correctness of jury instructions de novo, but review both the district court's phrasing of a jury instruction and refusal to give a requested instruction for abuse of discretion. *United States v. Singer*, 963 F.3d 1144, 1162 (11th Cir. 2020). We will not reverse a district court's decision to deny a requested jury instruction unless all of these conditions exist:  (1) "the proposed instruction correctly reflects the law"; (2) the jury instructions the district court actually gave did not address the proposed instruction"; and (3) "the district court's refusal to give the requested instruction 'seriously impaired the defendant's ability to present an effective defense.'"  *Id.* (quoting *United States v. Horner*, 853 F.3d 1201, 1208 (11th Cir. 2017).  In deciding whether the district court's chosen language substantially covered the proposed instruction, we "need only ascertain whether the charge, when viewed as a whole, fairly and correctly states the issues and the law." *United States v. Gonzalez*, 975 F.2d 1514, 1517 (11th Cir. 1992).

Fernandez's interchangeable use of "official act" and "official duty" is wrong.  "To the extent possible, the rules of statutory construction require courts to give meaning to every word and clause in a statute." *Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1195 (11th Cir. 2008).  And "courts must reject statutory interpretations that would render portions of a statute surplusage." *Id.*  Further, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act,

it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

Those canons of construction hold true here because subsections 201(b)(2)(A) and 201(b)(2)(C) apply to different types of bribery. The Second Circuit illustrated this distinction in analyzing subsections (A) and (C) of § 201(b)(1), which criminalizes the bribing or offering of a bribe to a public official. While subsection 201(b)(1)(A) requires intent "to influence any official act," subsection 201(b)(1)(C) requires intent "to induce" a "public official . . . to do or omit to do any act in violation of [his] lawful duty." 18 U.S.C. § 201(b)(1). Although those provisions "undoubtedly overlap in some considerable measure," the Second Circuit noted that subsection (A) covers "case[s] of bribes regarding decisions involving the exercise of judgment or discretion," while subsection (C) applies to "case[s] of bribes to induce actions that directly violate a specific duty." *United States v. Alfisi*, 308 F.3d 144, 151 n.3 (2d Cir. 2002).

The same is true for subsections 201(b)(2)(A) and 201(b)(2)(C). (Though unlike subsection 201(b)(2)(C), which references a public official's "official duty," subsection 201(b)(1)(C) uses the phrase "lawful duty.") Although the term "official duty" is not statutorily defined, its ordinary meaning encompasses a public official's job responsibilities as dictated by governing statutes, rules, and regulations. *See Official*, *Webster's New Int'l Dictionary* (2d ed. 1959) ("Of or pertaining to an office, position, or trust;

connected with holding an office; as, official duties, or routine."); *Duty*, *id.* ("That which is required by one's station or occupation."). Fernandez's statutory reading, which collapses the definition of "official act" into "official duty," would render subsection (C) surplusage of subsection (A). *Cf. Bhd. of Locomotive Eng'rs*, 522 F.3d at 1195; *see also United States v. Roberson*, 998 F.3d 1237, 1246 n.12 (11th Cir. 2021) (characterizing an argument that "improperly attempt[ed] to require an 'official act' for federal bribery laws generally" as "without statutory support").

The Supreme Court's decision in *McDonnell v. United States*, which clarified the meaning of "official act" as used in subsection (A) and gave rise to Fernandez's proposed instruction, illustrates the inapplicability of that term to our case. 136 S. Ct. 2355 (2016). There, former-Virginia Governor Bob McDonnell was indicted for accepting payments for "performing official actions on an as-needed basis" to promote research studies for a company's products. *Id.* at 2365. The parties agreed to use the definition of "official act" under § 201 in instructing the jury on honest services fraud and Hobbs Act extortion. *Id.* The Supreme Court ultimately held that an "official act" is a decision or action on a question or matter that "must involve a formal exercise of governmental power" and "must also be something specific and focused that is 'pending' or 'may by law be brought' before a public official." *Id.* at 2372. The Court explained that "[s]etting up a meeting, talking to another official, or organizing an event[,]" without more, "does not fit th[e] definition of 'official act.'" *Id.*

As the district court observed, Fernandez's proposed definition of "official duty," adapted from *McDonnell*'s definition of "official act," would have required proof that "the public official . . .made a decision or t[ook] an action on a question, matter, cause, suit pending, or controversy.  We don't have that."  The only definition of "official duty" that Fernandez proposed does not fit the facts of this case, which involves acceptance of bribes by an FAA inspector in exchange for committing acts he was not authorized to do—not by a politician conducting authorized legislative business.

The facts of this case also differ from those in *United States v. Mayweather*, 991 F.3d 1163 (11th Cir. 2021).  There, the district court denied the defendant's request to use our post-*McDonnell* pattern jury instruction defining "official act" as to Hobbs Act extortion charges.  *Id.* at 1181–82.  Although we concluded that the district court properly declined to instruct the jury with the proposed definition because it did "not fit the facts of [the] case," we held that the district court "was still required to define 'official act' because of the constitutional concerns underlying the *McDonnell* decision."  *Id.* at 1184.  We specifically highlighted the Supreme Court's concern that, under the government's reading of "official act," "'nearly anything a public official accepts—from a campaign contribution to lunch—counts as a *quid*; and nearly anything a public official does—from arranging a meeting to inviting a guest to an event—counts as a *quo*.'"  *Id.* at 1184 (quoting *McDonnell*, 136 S. Ct. at 2372).  We also cited the "significant federalism concerns"

that the government's position raised along with the potential for constitutional vagueness, *id.* at 1185, as a result of which "public officials could be subject to prosecution, without fair notice, for the most prosaic interactions." *McDonnell*, 136 S. Ct. at 2373. We concluded that the district court's error was not harmless, finding "a reasonable likelihood exist[ed] that the jury applied the instruction in an improper manner" based on the theory of the case that the government presented in closing argument. *Mayweather*, 991 F.3d at 1185.

The concerns underpinning *Mayweather* don't arise here. First, and foremost, this case concerns the application of "official duty" under § 201(b)(2)(C), not "official act" under § 201(b)(2)(A), as analyzed in *McDonnell*. Nor does this case implicate federalism problems, as Fernandez was a federal employee, not a state actor. Finally, the prospect of "prosecution, without fair notice, for the most prosaic interactions" does not arise under § 201(b)(2)(C) because violations of an "official duty," by their nature, arise only in "case[s] of bribes to induce actions that directly violate a specific duty." *See Alfisi*, 308 F.3d at 151 n.3.

The question of what responsibilities constituted Fernandez's "official duties" was a factual one for the jury. *Cf. United States v. Project on Gov't Oversight*, 616 F.3d 544, 562 (D.C. Cir. 2010) (quoting *United States v. Project on Gov't Oversight*, 543 F. Supp. 2d 55, 61 (D.D.C. 2008)) (explaining that "it is for the jury to decide what [a government employee's] official responsibilities were, what he did, and hence whether his conduct constituted

government services"). Accordingly, the district court correctly declined to use the only definition of "official duty" that Fernandez proposed and did not otherwise err in declining to define it further.

## B.    Evidence of official duties

Fernandez also contests the government's reliance on any evidence relating to the FAA rules and regulations that established his official duties.

We defined the contours for a jury's consideration of civil regulatory violations in criminal prosecutions in *United States v. Stefan*, 784 F.2d 1093 (11th Cir. 1986). There, the district court admitted evidence of civil regulatory banking statute violations and instructed the jury that it could infer criminal intent from those violations. *Id.* at 1097. We affirmed, holding that "[i]f the evidence of civil violations is introduced for purposes other than to show criminal misapplication and the evidence is not presented in such a way that the jury's attention is focused on the civil violations rather than the criminal ones, there is no error." *Id.* at 1098. Distinguishing the facts in that case from those in *United States v. Christo*, 614 F.2d 486 (5th Cir. 1980),[1] we emphasized that the district court's instructions to the jury clarified that civil or regulatory violations did not equate to criminal conduct. *Stefan*, 784 F.2d at 1099.

---

[1] Pre-October 1, 1981 Fifth Circuit decisions are binding precedent in our circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

The government contends that the introduction of the rules and regulations was critical to establishing the official duties governing Fernandez's role as an FAA inspector, Fernandez's knowledge of those duties, and Fernandez's corrupt intent in shirking those duties in exchange for bribes from the Suarezes. *Cf. United States v. Gjieli*, 717 F.2d 968, 977 (6th Cir. 1983) (affirming defendant's conviction for bribing a public official to induce him to act in violation of his "lawful duty" because bribe was calculated to cause public official to breach his duty to "uphold the laws of all governments within the United States" as established by civil regulation). Fernandez was "free to argue before the jury that the violations were not a sufficient indication of criminal guilt." *United States v. Imo*, 739 F.3d 226, 234 (5th Cir. 2014).

Fernandez maintains that the government's reliance on these rules and regulations might have led the jury to convict him of civil rather than criminal offenses. But Fernandez does not point to any portion of the trial transcript or record where the government explicitly urged the jury to convict him solely based on violations of rules or regulations. Further, the district court instructed the jury that it could convict Fernandez only on the charged criminal conduct, not for uncharged civil infractions. Because we assume the jury followed its instructions, *United States v. Butler*, 102 F.3d 1191, 1196 (11th Cir. 1997), the district court presumptively cured any potential confusion over the difference between civil and criminal misdeeds.

Fernandez mainly relies on the Fourth Circuit's decision in *United States v. Morlang*, 531 F.2d 183 (4th Cir. 1975). There, the defendant objected to the district court's jury instruction as to the general standards of conduct imposed on an unindicted co-conspirator that tracked the language of the entire code of conduct for the Department of Housing and Urban Development employees. *Id*. at 191. The Fourth Circuit found that the district court erred in reading the entire code—including portions irrelevant to the facts of the case—when defining the elements of the bribery charge. *Id*. at 191–92. But significantly, the Fourth Circuit agreed with the government that the jury was entitled to "know the standard [of] conduct required" of the official. *Id*. Thus, the district court correctly instructed the jury on regulations "prohibiting receipt of any salary from a private source as compensation for [the official's] services to the government, or using public office for private gain," *id*. at 192. So contrary to Fernandez's contention, *Morlang* did not turn on the mere fact that the jury instructions referenced the defendant's regulatory violations.

Instead, as the Fourth Circuit explained, the district court in that case erred by instructing the jury on the official's "duty not to impede Government efficiency or economy" or "affect adversely the confidence of the public in the integrity of the Government" because such language is "too indefinite and vague" absent any "charge or evidence that the bribes alleged may have been for such purpose." *Id*. (alteration adopted) (internal quotation marks omitted).

Because no evidentiary disconnect exists between the regulations that the government introduced and Fernandez's bribes of conviction, a similar dilemma did not arise here. The evidence presented at trial supports the jury's conclusion that Fernandez accepted bribes in exchange for violating his official duties, including, as *Morlang* approvingly noted, salary from a private source and using public office for private gain.

## C.    Prosecutorial misconduct

Fernandez also accuses the government of committing prosecutorial misconduct during closing argument by asking the jury to conclude that certain evidence established his official duties. Because Fernandez did not preserve this argument below, we review only for plain error "that is so obvious that failure to correct it would jeopardize the fairness and integrity of the trial." *United States v. Merrill*, 513 F.3d 1293, 1307 (11th Cir. 2008) (quoting *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997)). But even if he had preserved it, we find no reversible error as to any of the government's statements made at closing argument.

To establish prosecutorial misconduct, Fernandez must demonstrate that "the remarks in question were both (a) improper and (b) prejudicial to the defendant's substantial rights." *United States v. Nerey*, 877 F.3d 956, 970 (11th Cir. 2017). A prosecutor's remarks are prejudicial to a defendant's substantial rights when there is a "reasonable probability" that the trial's outcome would have differed but for those remarks. *Id.* (quoting *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006)).

Fernandez has not demonstrated how any of the challenged remarks were improper or prejudicial. The government's remarks during closing advanced an appropriate argument asking the jury to draw reasonable inferences from facts in evidence, and none invited unfair prejudice. "Although it may be error to allow counsel to argue to the jury facts that are not in evidence, 'a[n] attorney is entitled to urge the conclusions which the attorney thinks the jury should draw from the evidence.'" *United States v. Calderon*, 127 F.3d 1314, 1336 (11th Cir. 1997) (quoting *United States v. Braithwaite*, 709 F.2d 1450, 1456 (11th Cir. 1983)); *see also United States v. Gonzalez,* 834 F.3d 1206, 1226–27 (11th Cir. 2016) ("[A] prosecutor may argue both facts in evidence and reasonable inferences from those facts.") (quoting *Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) (en banc))). Although none of the government's witnesses described Fernandez's job responsibilities and obligations using the statutory term of art "official duty," the prosecutor was free to argue that the responsibilities to which the witnesses testified constituted Fernandez's "official duties." *See Project on Gov't Oversight*, 616 F.3d at 562 (characterizing government employee's official duties as "an issue of fact for the jury to decide.").

The remarks' isolated nature also goes against a finding of prejudice. The contested comments comprise only several lines of a 15-day trial transcript that spans thousands of pages. We cannot say that those comments were "so pronounced and persistent that [they] permeate[d] the entire atmosphere of the trial." *United*

*States v. Woods,* 684 F.3d 1045, 1065 (11th Cir. 2012) (quoting *United States v. Crutchfield*, 26 F.3d 1098, 1099 (11th Cir. 1994)).

In sum, we find that no prosecutorial misconduct occurred in the district court.

### D.    Sufficiency of the evidence

Fernandez challenges the sufficiency of the evidence on his bribery, false statement, wire fraud, and aggravated identity theft convictions. At the close of the government's case, Fernandez moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. Fernandez argues that the district court erred in denying both his motion and his renewed motion under Rule 29 as to the bribery/false statement counts because the government had not established that he accepted anything of value in exchange for violating his official duties. Fernandez also contends that there was insufficient evidence to find him guilty on the wire fraud/aggravated identity theft counts because the government adduced insufficient evidence that Fernandez submitted the doctor's note justifying his sick leave knowing it to be fraudulent.

We review challenges to the evidentiary sufficiency of a judgment de novo. *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011). We "will uphold the denial of a Rule 29 motion if we 'determine that a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt.'" *Id.* (quoting *United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002)). "'We view the evidence in the light most

favorable to the government,' making all reasonable inferences and credibility choices in the government's favor," *id.* (quoting *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008)). "A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." *United States v. Frank*, 599 F.3d 1221, 1233 (11th Cir. 2010) (quoting *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999)).

Viewing the evidence in the light most favorable to the government, there was sufficient evidence that Fernandez violated his official duties as an ASI. The evidence at trial showed that payments Fernandez received from AVCOM fueled Fernandez's bribery scheme. Fernandez derived a total of $179,678.76 from the scheme, consisting of $65,928.00 in cash deposits into accounts under Fernandez's control; $12,030.00 in checks and bank transfers from AVCOM to Fernandez; $86,824.00 in net cash deposits in accounts under the control of Juana Fores, Fernandez's mother; and $14,869.76 in checks and bank transfers from AVCOM to Fores.

Fernandez attacks the credibility of Rolando Suarez, the government's cooperating witness who detailed AVCOM's bribery arrangement with Fernandez at trial. Fernandez is essentially asking us to weigh Rolando's credibility anew. But we cannot do that, as we must "assume that the jury made all credibility choices in support of the verdict"—not against it. *United States v. Jiminez*, 564 F.3d 1280, 1285 (11th Cir. 2009). And "[i]n rebutting the government's evidence 'it is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not

whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt.'" *Id.* (alteration adopted) (quoting *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006)); *accord United States v. Garcia*, 447 F.3d 1327, 1334 (11th Cir. 2006) (explaining that juries are "free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial," and emphasizing that courts "must accept all reasonable inferences and credibility determinations made by the jury.") (quoting *United States v. Sellers*, 871 F.2d 1019, 1021 (11th Cir. 1989)). The record shows that Fernandez had a full and fair opportunity to highlight for the jury the alleged shortcomings in Rolando's testimony that he identifies, both through cross-examination or his closing argument. The jury ultimately convicted Fernandez and, in so doing, implicitly rejected his attacks on Rolando's credibility.

As to his wire fraud and identity theft convictions, Fernandez argues that the evidence shows that he legitimately obtained a doctor's note to justify his June 2013 sick leave. To the contrary, the evidence at trial strongly suggests that the note was fraudulent. That note originated from Dr. Zaldivar's prescription pad. And he testified that he never prepared the note; that the handwriting on the document was not his; that Fernandez was not a patient of his; that he had no patient file for Fernandez; that he would not treat a non-patient for fear of potential legal exposure; that "severe back pain" is not a medically valid diagnosis; and that the remedy that the note prescribed—two weeks' rest—is not even a valid

treatment for severe back pain.  The note was also written on the prescription pad that the doctor reserved for prescribing medication rather than the one he reserved for prescribing treatment.  For these reasons, Dr. Zaldivar said that he viewed the contents of the note as "nonsense," written "by someone that doesn't have a clue about medicine."

In sum, in viewing the evidence in the light most favorable to the government, we find sufficient evidence supported the jury's guilty verdict as to the bribery, false statement, wire fraud, and aggravated identity theft counts.

## IV.

Fernandez also challenges his 75-month sentence.  First, he argues that the district court failed to make specific findings as to the obstruction enhancement and that the evidence did not support any finding that he obstructed justice.  Second, Fernandez contends that the district court erred by imposing forfeiture without a hearing and by incorrectly calculating the forfeiture amount related to the bribery scheme.  And third, he asserts that the district court imposed an overbroad condition of release without making any findings to justify it.

## A.

When reviewing a court's imposition of an obstruction enhancement, we review the district court's factual findings for clear error and its application of those facts to the Guidelines de novo. *United States v. Guevara*, 894 F.3d 1301, 1311 (11th Cir. 2018)

(quoting *United States v. Perkins*, 787 F.3d 1329, 1341 (11th Cir. 2015)).  Review for clear error is deferential, and "we will not disturb a district court's findings 'unless we are left with a definite and firm conviction that a mistake has been committed.'" *United States v. Sosa*, 777 F.3d 1279, 1300 (11th Cir. 2015) (quoting *United States v. Clarke*, 562 F.3d 1158, 1165 (11th Cir. 2009)).  A "district court's choice between permissible views [of the evidence] cannot be clear error."  *United States v. Ndiaye*, 434 F.3d 1270, 1305 (11th Cir. 2006) (citing *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1335 n.30 (11th Cir. 1999)).

"The government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement."  *United States v. Kinard,* 472 F.3d 1294, 1298 (11th Cir. 2006).  The district court may draw reasonable inferences from facts in the record.  *United States v. Scott*, 441 F.3d 1322, 1327 (11th Cir. 2006).

The Guidelines provide that a defendant's offense level can be enhanced by two levels if (1) he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to an investigation, prosecution, or sentencing of [his] instant offense," and (2) his "obstructive conduct related" either to his "offense of conviction and any relevant conduct" or to "a closely related offense," U.S.S.G. § 3C1.1.  To permit "meaningful appellate review," sentencing courts must make specific findings of fact when they adjust sentences for obstruction of justice. *Guevara*, 894 F.3d at 1311 (quoting *United States v. Alpert*, 28 F.3d

1104, 1107 (11th Cir. 1994) (en banc)). But if the record clearly supports the adjustment by clearly reflecting the basis for it, the court need not make individualized findings regarding obstruction of justice. *Id.*

A defendant "willfully" obstructs "the administration of justice" within the meaning of U.S.S.G. § 3C1.1 when he commits, suborns, or attempts to suborn perjury. *See United States v. Duperval*, 777 F.3d 1324, 1337 (11th Cir. 2015) (citing U.S.S.G. § 3C1.1 cmt. n.4(B)). "Perjury is 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *Id.* (quoting *United States v. Singh*, 291 F.3d 756, 763 (11th Cir. 2002)). Testimony is material where, if believed, it would tend to influence or affect the issue under determination. U.S.S.G. § 3C1.1 cmt. n.6. Typically, material testimony goes to the issue of a defendant's guilt. *See, e.g.*, *United States v. McKinley*, 732 F.3d 1291, 1297–98 (11th Cir. 2013). When multiple instances of obstruction are at issue, we will uphold the district court's enhancement if the record supports at least one finding of obstruction. *See Ndiaye,* 434 F.3d at 1303 (holding that record supported obstruction enhancement when defendant indirectly influenced witness to sign a false affidavit, even though defendant may not have instructed two witnesses to testify falsely).

Here, the district court did not err by imposing the obstruction enhancement because the record clearly supports the finding that Fernandez intentionally suborned false testimony as to

whether he received consideration for violating his official duties from his wife, Oreida Alvarez. At trial, Alvarez testified that her business was the source of the deposits into Fernandez's bank accounts and, by implication, that the Suarezes's bribes were not the source of the deposits. Then, she testified that her business had revenues of $10,000 to $16,000 a month, acknowledging that her state tax filings reflected zero gross sales during some of the months in question. In one month, the deposit was nearly eight times as much as her reported gross sales. That Alvarez lied under oath about an element of a crime for which Fernandez was charged was more likely than not. *See Kinard,* 472 F.3d at 1298 (explaining that the government must establish "by a preponderance of the evidence the facts necessary to support a sentencing enhancement"). Further, the district court reasonably inferred that Alvarez's false testimony was not the result of confusion, mistake, or faulty memory. *See Scott*, 441 F.3d at 1327 (affirming sentencing enhancement supported by district court's reasonable inference). Thus, we find no reversible error.

## B.

Next, Fernandez challenges the district court's imposition of forfeiture without a hearing and its calculation of the forfeiture amount related to the bribery scheme.

We review de novo the district court's legal conclusions regarding forfeiture and its findings of fact for clear error. *United States v. Puche*, 350 F.3d 1137, 1153 (11th Cir. 2003).

Federal law provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" certain offenses, including "bribery of a public official." *See* 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7)(B)(iv). "[T]he term 'proceeds' means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." *Id.* § 981(a)(2)(B). If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay. FED. R. CRIM. P. 32.2(b)(1)(A). The preponderance standard governs criminal forfeiture. *United States v. Hasson*, 333 F.3d 1264, 1277 (11th Cir. 2003). "If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty." FED. R. CRIM. P. 32.2(b)(1)(B).

The district court did not err by imposing forfeiture without a hearing because Fernandez never requested a hearing. *See* FED. R. CRIM. P. 32.2(b)(1)(B). Further, the district court properly calculated the forfeiture amount based on evidence regarding the checks, bank transfers, and cash payments Fernandez and his mother, who acted as a front to conceal payments to Fernandez, received.

## C.

Finally, Fernandez argues that the district court erred in forbidding him from working in any aspect of the aviation industry during his term of supervised release.

We generally "review the imposition of special conditions of supervised release for abuse of discretion." *United States v. Carpenter*, 803 F.3d 1224, 1237 (11th Cir. 2015) (quoting *United States v. Moran*, 573 F.3d 1132, 1137 (11th Cir. 2009)). But when a defendant waives his objection to the imposition of special conditions of supervised release, "we are limited to reviewing for plain error." *Id.* (quoting *United States v.* Zinn, 321 F.3d 1084, 1087 (11th Cir. 2003)). To avoid that fate, a defendant must "articulate the specific nature of his objection to a condition of supervised release so that the district court may reasonably have the opportunity to consider it. *Id.* (quoting *Zinn*, 321 F.3d at 1090 n.7). "And he must do so in a manner 'sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought.'" *Id.* at 1237–38 (quoting *United States v. Gonsalves*, 121 F.3d 1416, 1420–21 (11th Cir. 1997)). Thus, "[a] sweeping, general objection is insufficient to preserve specific sentencing issues for review." *Id.* at 1238.

Under plain error review, a defendant must demonstrate that (1) an error occurred; (2) the error was plain; and (3) the error affects his substantial rights. *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003) (quoting *United States v. Lejarde-Rada*, 319 F.3d 1288, 1290 (11th Cir. 2003)). If all three conditions are satisfied, we may exercise our discretion to correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* (quotation marks omitted).

To establish error, a defendant must show that the district court "abused its discretion in imposing the challenged [special] conditions" of supervised release. *Carpenter*, 803 F.3d at 1238. Section 3583(d) of Title 18 of the U.S. Code authorizes the imposition of occupational restrictions as a condition of supervised release. *See* 18 U.S.C. § 3583(d). Likewise, U.S.S.G. § 5F1.5, which implements Congress' mandate in 18 U.S.C. § 3583(d), authorizes a court to impose occupational restrictions and restricts its authority to do so to those instances where the court finds (1) "a reasonably direct relationship" between the occupational restriction and the conduct relevant to the defendant's offense and (2) the restriction is "reasonably necessary to protect the public" from the possibility the defendant will "continue to engage in unlawful conduct similar to that for which he was convicted." U.S.S.G. § 5F1.5(a). If the court decides to impose a condition restricting a defendant's engagement in a specified occupation, business, or profession, the court must impose the condition "for the minimum time and to the minimum extent necessary to protect the public." *Id.* § 5F1.5(b). A district court need not make specific findings prior to imposing a special condition when the condition imposed is clear, and undisputed facts contained in the PSI support the condition. *United States v. Ridgeway*, 319 F.3d 1313, 1317 (11th Cir. 2003).

Here, Fernandez's general objection to the related-concern condition below did not articulate the specific nature of the objection he raises now on appeal, so we review this claim for plain

error.  The district court did not plainly err by barring Fernandez from working in any aspect of the aviation industry during his term of supervised release because it did not commit any error.  The restriction bore a direct relationship to his offense conduct and was reasonably necessary to protect the public from the possibility that he would continue to engage in unlawful conduct similar to that for which he was convicted.  Further, the district court was not required to make specific findings before imposing the condition because the condition imposed and the justifications for it were clear.

## V.

We affirm Fernandez's conviction and sentences.

**AFFIRMED.**